CA No. 20-99009

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEZMOND CHARLES MITCHELL,

Defendant-Appellant.

DC No. 3:01-cr-01062-DGC
(Civil No. 3:09-cv-08089-DGC)

**DEATH PENALTY CASE**

**Execution Set For:**
**August 26, 2020 at**
**Time: To Be Determined.**

# APPELLANT'S REPLY TO APPELLEE'S NOTICE OF FILING OF DECLARATION

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

The Honorable David G. Campbell
United States District Judge

CUAUHTEMOC ORTEGA
Interim Federal Public Defender
JONATHAN C. AMINOFF
Jonathan_Aminoff@fd.org
CELESTE BACCHI
Celeste_Bacchi@fd.org
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Tel: (213) 894-5374; Fax: (213) 894-0310
Attorneys for Petitioner-Appellant
LEZMOND CHARLES MITCHEL

Mitchell objects to the manner of execution that that Government and the Court are creating. Under 18 U.S.C. § 3596, the Government is obligated to execute Mitchell in accordance with *all of* Arizona law, not in accordance with a judicially-created lethal injection protocol that only covers four select provisions of Arizona's lethal injection protocol.[1] This Court has no power to fashion such compromises in death penalty cases and it should not do so here. *Morales v. Cate*, 623 F.3d 828, 831 (9th Cir. 2010) *as amended* (Sept. 28, 2010) ("Despite the best of intentions on the part of the district court to fashion a compromise and a choice of methods here, imposing on Brown such a choice between the new three-drug protocol and a one-drug option never adopted by the State places an undue burden on Brown and is beyond the power and expertise of the district court at this juncture. The result in this case should not be driven by compromise nor by the

[1] The Court directed BOP to comply with certain provisions of Department Order 710 in an apparent effort to make sure that the BOP's execution of Mitchell would be substantially similar in four ways that the Court deems to be material. Mitchell has argued—and this Court's order seems to agree—that Arizona law includes not just the directives in Arizona statutes, but Department Order 710 as well. However, the law requires that Mitchell be executed "in the manner prescribed by law of the State of Arizona" does not include *just* those four provisions. Rather, he is entitled to be executed according to the entirety of Department Order 710, as everything within that order creates legally enforceable rights or obligations under Arizona law. *See First Amendment Coalition of Arizona, Inc. v. Ryan*, Case No. 2:14-cv-01447, dkt. 186 (D. Ct. Ariz. June 21, 2017) at 1-2 (pursuant to stipulation, ADC and related defendants may never again claim that the protocols do not create legally enforceable rights and obligations).

State's deadlines superimposed on the district court's already pending review of the new execution protocol.")

Nor does the Government have the right to engage in ad hoc, last-minute changes to its execution protocol. "Because the death penalty is undeniably the most serious penalty available to a State, the procedures for such penalty must be implemented in a reasoned, deliberate, and constitutional manner." *Towery v. Brewer*, 672 F.3d 650, 653 (9th Cir. 2012) (internal quotations omitted). This Court once chastised the State of Arizona for "amending its execution protocol on an ad hoc basis—through add-on practices, trial court representations and acknowledgments, and last minute written amendments—leaving the courts with a rolling protocol that forces us to engage with serious constitutional questions and complicated factual issues in the waning hours before executions." *Id.* The protocol that Arizona has now is, in part, the result of this Court's admonishment that the informal, rolling amendments "cannot continue." *Id.* If the State of Arizona cannot conduct executions in this manner, neither can the federal government.

The irreparable harm in this situation is that without a stay of execution, Mitchell will not be able to pursue his claim that the lethal injection protocol fails to comply with Arizona's lethal injection protocol, *see* Exhibit 3 (table), and that Mitchell will be executed via an execution procedure that is unlawful. This is precisely the harm that the District Court for the District of Columbia described as

"manifestly irreparable" when granting a preliminary injunction to multiple death-sentenced inmates on a very similar claim. *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 12-CV-0782, 2019 WL 6691814, at *7 (D.D.C. Nov. 20, 2019), *vacated and remanded sub nom. In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020) ("Here, absent a preliminary injunction, Plaintiffs would be unable to pursue their claims, including the claim that the 2019 Protocol lacks statutory authority, and would therefore be executed under a procedure that may well be unlawful. This harm is manifestly irreparable.") The Government's application to vacate the District Court for the District of Columbia's injunction was *unanimously* denied by the Supreme Court. *Barr v. Roane*, 140 S. Ct. 353, 205 L. Ed. 2d 379 (2019).

Mitchell respectfully requests that this Court stay Mitchell's August 26, 2020 execution, and remand this case to the district court for a factual determination regarding the totality of the differences between the Arizona protocol and the federal protocol. *Kappos v. Hyatt*, 566 U.S. 431, 439 (2012) ("[A] district court, unlike a court of appeals, has the ability and the competence to receive new evidence and to act as a factfinder."); *see also Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1511 n.5 (9th Cir. 1994) ("Facts not presented to the district court are not part of the record on appeal.").

Alternatively, Mitchell requests that this Court stay Mitchell's August 26, 2020 execution and consider the underlying merits of Mitchell's claim regarding the Government's violation of the district court's January 2004 sentencing order after full briefing and an appeal in the ordinary course.

However, if the Court is not inclined to grant Mitchell's motion for stay of execution, then Mitchell requests that this motion be denied expeditiously such that he can seek further review in the United States Supreme Court.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: August 19, 2020 By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorney for Defendant-Appellant
LEZMOND CHARLES MITCHELL

# EXHIBIT 3

Arizona Method v. DOJ Method

*Date*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The warrant of execution must specify an execution date that is 35 days after the warrant's issuance. If the Supreme Court finds that it is impracticable to carry out an execution on that date, it may extend the execution date but may not extend it more than 60 days after the warrant's issuance. Additionally, the warrant must:<br><br>(1) state the date for starting the execution time period;<br><br>(Ariz. R. Crim. P. 31.23(C)) | On a date [. . .] designated by the Director of the Federal Bureau of Prisons []. If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted;<br><br>(28 C.F.R. § 26.3(a)(1))<br><br>Except to the extent a court orders otherwise, the Director of the BOP will designate a date, time, and place for the execution of the sentence.<br><br>[. . .]<br><br>Under current federal regulations, the date established will be no sooner than 60 days from the entry of the judgment of death (28 C.F.R. § 26.3{a) (1)) and notice of it must be given to the defendant no later than 20 days before the execution (28 C.F.R. § 26.4(a)). If the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted.<br><br>(DOJ Protocol at 5.) |

*Time*[1]

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The Director shall select the time of execution and provide notice to the Arizona Supreme Court and the parties at least 20 calendar days prior to the execution date. (Arizona Rules of Criminal Procedures, Rule 31.17(c)(3)).<br><br>(AZ Protocol at 3.)<br><br>The warrant must:<br><br>(2) state that the warrant is valid for 24 hours beginning at an hour to be designated by the director of the Arizona Department of Corrections;<br><br>(3) order the director to provide written notice of the designated hour of execution to the Supreme Court and each party at least 20 calendar days before the execution date; and<br><br>(Ariz. R. Crim. P. 31.23(c)(3)) | [Not specified] |

[1] *See US v. Hammer*, 121 F.Supp.2d 794 (M.D.Pa. 2000) on issues of litigating time of the day of the execution in this context.

*Place of Execution*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| [Not specified] | At a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons. (28 C.F.R. § 26.3 (a)(2))<br><br>On June 18, 1993, the Director of the BOP established the United States Penitentiary, Terre Haute, Indiana, as the site of such executions.<br><br>(DOJ Protocol at 5.) |

*Whom?*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| *See execution teams detailed below.* | By a United States Marshal designated by the Director of the United States Marshals Service, assisted by additional personnel selected by the Marshal and the Warden of the designated institution and acting at the direction of the Marshal; and<br><br>(28 C.F.R. § 26.3(a)(3)) |

*Method of Execution*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The penalty of death shall be inflicted by an intravenous injection of a substance or substances in a lethal quantity sufficient to cause death, under the supervision of the state department of corrections.<br><br>(Ariz. Rev. Stat. Ann. § 13-757(A)) | By intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal.<br><br>28 C.F.R. § 26.3(a)(4)<br><br>Federal death sentences are implemented by an intravenous injection of a lethal substance or substances in a quantity sufficient to cause death, such substance or substances to be determined by the Director, Federal Bureau of Prisons (BOP) and to be administered by qualified personnel selected by the Warden and acting at the direction of the United States Marshal. 28 CFR 26.3.<br><br>(DOJ Addendum 7/25/2019 at A.) |

*The Drug*

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| Sodium Thiopental or Pentobarbital:<br><br>The Director shall have the sole discretion as to which drug protocol will be used for the scheduled execution. This decision will be provided to the inmate and their counsel of record in writing at the time the state files a request for Warrant of Execution in the Arizona Supreme Court.<br><br>If the Department is able to obtain the chemical pentobarbital in sufficient quantity and quality to successfully implement the one-drug protocol with pentobarbital set forth in Chart A, then the Director shall use the one-drug protocol with pentobarbital set forth in Chart A as the drug protocol for execution.<br><br>If the Department is unable to obtain such pentobarbital, but is able to obtain the chemical sodium pentothal in sufficient quantity and quality to successfully implement the one-drug protocol with sodium pentothal set forth in Chart B, then the Director shall use the one-drug protocol with sodium pentothal set forth in Chart B as the drug protocol for execution.<br><br>(AZ Protocol, Attachment D at 2.) | The lethal substances to be utilized in federal lethal injections shall be Pentobarbital Sodium.<br><br>(DOJ Addendum 7/25/2019 at C.) |

*Pre-Execution Access to Counsel, Family, Spiritual Advisors, Etc.*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| Thirty-five days prior to the execution, the Warden (or designee) will offer the inmate the opportunity to contact their Attorney of Record by phone and to speak with a facility chaplain. (AZ Protocol at 11.)<br><br>The Warden shall allow the inmate to keep in the cell one box each of legal and religious materials, a pencil and paper, and a book or periodical. (AZ Protocol at 12.)<br><br>The inmate's visitation privileges shall be terminated at 2100 hours the day prior to the execution. The inmate will be permitted two hours of in-person visitation with no more than two Attorneys of Record, concluding one hour prior to the scheduled execution. (AZ Protocol at 15.) | Beginning seven days before the designated date of execution, the prisoner shall have access only to his spiritual advisers (not to exceed two), his defense attorneys, members of his family, and the officers and employees of the institution. Upon approval of the Director of the Federal Bureau of Prisons, the Warden may grant access to such other proper persons as the prisoner may request. (28 C.F.R. § 26.4 (b) / DOJ Protocol at 10.)<br><br>The condemned individual's Attorney(s) of Record, spiritual adviser(s), immediate family members or other persons approved by the Director of the BOP, will be given visiting privileges during the final 24 hours as determined by the Warden. Visiting privileges will be suspended when preparations for the execution require suspension. (DOJ Protocol at 14.)<br><br>From 12 to 3 hours prior to execution, visits by family, attorneys, religious representatives, and other persons approved by the Director of the BOP, will be at the discretion of the Warden. (DOJ Protocol at 16.) |

*Pre-Execution Phone Calls*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| Twenty-four hours prior to the day of the execution, the Warden shall ensure phone calls are concluded by 2100 hours. The inmate's telephone privileges shall be terminated at 2100 hours the day prior to the execution, excluding calls from the inmate's Attorney of Record and others as approved by the Division Director for Prison Operations. (AZ Protocol at 15.) | Excluding calls to the condemned individual's Attorney(s) of Record and calls specifically approved by the Warden, the condemned individual's telephone privileges will be terminated 24 hours prior to the execution.<br><br>(DOJ Protocol at 14.) |

*Qualification/Selection of Executioners*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| **Command Team** (deals with overall coordination of execution procedures) is selected by Division Director with documented approval of Director.<br><br>**Housing Unit 9 Section** (deals with conditions of confinement and application of approved procedures) is the Restraint + Special Ops team and is selected by Division Director with documented approval of Director.<br><br>• Restraint Team (at least 7 members) provides continuous observation of the inmate on day of execution and applies appropriate restraint procedures | Not less than fourteen (14) days prior to a scheduled execution, the Director or designee, in conjunction with the United States Marshal Service, shall make a final selection of qualified personnel to serve as the executioner(s) and their alternates. *See* BOP Execution Protocol, Chap. 1, §§ III (F) and IV (B) & (E).<br><br>(DOJ Addendum 7/25/2019 at D.)<br><br><u>BOP Protocol, Chap. 1, §§ III (F)</u><br>Those persons necessary to carry out the execution will be identified. |

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| • Special Ops team (at least 5 members) implements the protocol, with primary duty of administering the chemicals and mixing the chemicals<br><br>**Intravenous Team Members** (deals with inserting access, ensuring lines are functioning, supervising the Special Ops team in mixing the chemicals, prepares the syringes, monitors the inmate) are selected by the Director. At least two or more qualified (*see below*) members.<br><br>**Maintenance Response Team** (deals with testing equipment and ensuring it works) is at least 4 members and selected by the warden.<br><br>**Critical Incident Response Team** (deals with educating staff regarding possibly psychological responses and coping mechanisms) is at least 4 members and selected by the Employee Relations Administrator.<br><br>**Traffic Control Team** (deals with state/local law enforcement, traffic control, etc.) is at least 9 members and selected by the Division Director for Prison Operations. | The Warden, with the assistance of the Director, USMS, and the Director, BOP, will be responsible for identifying, selecting and obtaining the services of the individuals administering the lethal injection.<br><br>The Warden is responsible for selection of the persons involved in perimeter security, transportation, and command post operations, as well as crowd control, support functions and access screening.<br><br>Individuals will be identified for placement in all vital or important positions. Alternates will also be identified. The Assistant Director, Correctional Programs Division, Regional Director, and the Warden will determine which positions require alternates and will ensure adequate coverage is provided. (DOJ Protocol at 7.)<br><br><u>BOP Protocol, Chap. 1, § IV (B) & (E)</u><br>B. *Qualified Person*<br><br>The Warden will finalize arrangements for a qualified person to be present at the execution and to declare the executed individual deceased.<br><br>E. *Selection of Executioner(s)* |

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| **Escort Team** (deals with movement of witnesses) is at least 9 members and selected by Division Director for Prison Operations.<br><br>**Victim Services Team** (deals with communication with victims) is at least 2 members and has specific duties on the day of the execution.<br><br>(AZ Protocol at 5-8.)<br><br>With respect to certain teams, the protocol has disqualifying provisions including: "No employee who was suspended or demoted in the past 12 months shall be considered. Any staff currently under investigation is also ineligible," and "Staff with less than two years employment with the Department shall not be considered."<br><br>(AZ Protocol at 9.) | The Warden, with the assistance of the Director, USMS and Director, BOP, will finalize the selection of executioner(s) and their alternates.<br><br>(DOJ Protocol at 9.) |

*IV Team Qualifications*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The IV Team will consist of any two or more of the following:<br><br>physician(s), physician assistant(s), nurse(s), emergency medical technician(s) (EMTs), paramedic(s), military corpsman or other certified or licensed personnel including those trained in the United States Military.<br><br>All team members shall be currently certified or licensed within the United States to place IV lines.<br><br>The IV Team members shall be selected by the Director.<br><br>Selection of any team member shall include a review of the proposed team member's qualifications, training, experience, and/or any professional license(s) and certification(s) they may hold.<br><br>Licensing and criminal history reviews shall be conducted, by the Inspector General's Office prior to assigning or retaining any IV Team member and upon the issuance of a Warrant of Execution.<br><br>(AZ Protocol at 6.) | Qualified personnel includes currently licensed physicians, nurses, EMTs, Paramedics, Phlebotomists, other medically trained personnel, including those trained in the United States Military having at least one year professional experience and other personnel with necessary training and experience in a specific execution related function.<br><br>Any documentation establishing the qualifications, including training, of such personnel shall be maintained by the Director or designee.<br><br>(DOJ Addendum 7/25/2019 at D.) |

*Intravenous Access*

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| The IV Team shall be responsible for inserting either peripheral IV<br><br>catheters or a central femoral line as determined by the Director acting upon the recommendation of the IV Team Leader.<br><br>A central femoral venous line will not be used unless the person placing the line is currently qualified by experience, training, certification or licensure within the United States to place a central femoral line.<br><br>(AZ Protocol at 7.) | Lethal substances shall be administered intravenously. The Director or designee shall determine the method of venous access<br><br>(1) based on the training and experience of personnel establishing the intravenous access;<br><br>(2) to comply with specific orders of federal courts; or<br><br>(3) based upon a recommendation from qualified personnel.<br><br>(DOJ Addendum 7/25/2019 at H.) |

*Last Meal*

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| The Warden shall advise the inmate he may request a last meal by completing the Last Meal Request, Form 710-5, and returning it no later than 14 days prior to the execution. Reasonable effort shall be made to accommodate the request.<br><br>(AZ Protocol at 4.) | At least seven days prior to execution, the Warden or designee will contact the condemned individual to arrange for his/her last meal.<br><br>(DOJ Protocol at 10.) |

| | |
|---|---|
| The ASPC-Eyman or ASPC-Perryville Warden shall ensure the inmate receives the last meal by 1900 hours. Every reasonable effort to accommodate the last meal request will have been made. All eating utensils and remaining food and beverage shall be removed upon completion of the meal.<br><br>(AZ Protocol at 15.) | The Warden will contact the condemned individual to finalize arrangements for his/her final meal and ensure that it is properly prepared and served by staff.<br><br>(DOJ Protocol at 14.)<br><br>The condemned individual will be served a final meal at a time determined by the Warden.<br><br>(DOJ Protocol at 16.) |

*Training*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The Division Director for Prison Operations shall establish a training schedule and identify dates for periodic on-site practice by the Housing Unit 9 Section Teams, to include 10 training scenarios within 12 months preceding the scheduled execution. [The Director shall] conduct a minimum of 2 training sessions with multiple scenarios 2 days prior to the scheduled execution.<br><br>The IV Team members shall participate in at least 1 training session with multiple scenarios within 1 day prior to the scheduled execution.<br><br>(AZ Protocol at 4.) | The Warden will ensure that appropriate training sessions are held for persons involved in the various aspects of the execution event.<br><br>Not all of the persons involved need to practice together. Individual teams will practice as units, with inter-team practices scheduled, as necessary by the Warden, to facilitate coordination and smooth interaction.<br><br>(Protocol at 9-10.)<br><br>Final practices will be conducted as directed by the Warden.<br><br>(DOJ Protocol at 13.) |

| | |
|---|---|
| IV Team members shall only be required to participate in the training sessions scheduled for 1 day prior to the actual execution.<br><br>(AZ Protocol at 7.)<br><br>Two days prior to an execution, the Division Director schedules and conducts on-site scenario training sessions, modifying practices as warranted.<br><br>(AZ Protocol at 14.) | Non-medically licensed or certified qualified personnel shall participate in a minimum of ten (10) execution rehearsals a year and shall have participated in at least two (2) execution rehearsals prior to participating in an actual execution. (DOJ Addendum 7/25/2019 at D). |

*Last Rites*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| [Not specified] | [Not specified] |

*Procurement of LI Drugs*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The Housing Unit 9 Section Leader shall ensure that complete sets of chemicals are on site, not expired, and immediately available for use.<br><br>ADC will only use chemicals in an execution that have an expiration or beyond-use date that is after the date that an execution is carried out. If the chemical's expiration or beyond-use date states only a month and | The Warden will ensure the purchase of lethal substances to be used in the execution. Once purchased, these lethal substances will be secured in the institution until called for by the Warden.<br><br>(DOJ Protocol at 10.) |

| | |
|---|---|
| year (e.g., "June 2017"), then ADC will not use that chemical after the last day of the month specified.<br><br>(AZ Protocol, Attachment D at 1.)<br><br>The decision to use a compounded or non-compounded chemical will be provided to the inmate and their counsel of record in writing at the time the state files a request for Warrant of Execution in the Arizona Supreme Court.<br><br>(AZ Protocol, Attachment D at 2.) | |

*Storage of LI Drugs*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The Housing Unit 9 Section Leader shall ensure the chemicals are ordered, arrive as scheduled and are properly stored. The chemicals shall be stored in a secured, locked area that is temperature regulated and monitored to ensure compliance with manufacturer specifications, under the direct control of the Housing Unit 9 Section Leader.<br><br>(AZ Protocol, Attachment D at 1.) | [Not specified] |

*Testing of LI Drugs*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| A quantitative analysis of any compounded or non-compounded chemical to be used in the execution shall be provided upon request within ten calendar days after the state seeks a Warrant of Execution.<br><br>(AZ Protocol, Attachment D at 2.) | [Not specified] |

*Documentation of Execution Procedures*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| *See duties of Recorder throughout execution.* | The Warden will designate a recorder who will begin logging execution activities in the official execution log book commencing three hours prior to the scheduled execution. This includes the time of: condemned leaving the inmate holding cell, when strapped to the gurney, arrival of witnesses, opening of drapes, last statement, approval of the process, signal that drugs have been administered, EKG determination, announcement of death, closing of drapes, notification of public of death, removal of witnesses, removal of body, cleaning chores, and securing the chamber.<br><br>(DOJ Protocol at 17.) |

*Preparing of Syringes*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The IV Team Leader, with the assistance of a Special Operations Team member, shall be responsible for preparing and labeling the assigned sterile syringes in a distinctive manner identifying the specific chemical contained in each syringe by<br><br>i) assigned number,<br>ii) chemical name,<br>iii) chemical amount and<br>iv) the designated color, as set forth in the chemical charts below. This information shall be preprinted on a label, with one label affixed to each syringe to ensure the label remains visible.<br><br>(AZ Protocol, Attachment D at 1.)<br><br>After the IV Team prepares all required syringes with the proper chemicals and labels as provided in the Chemical Chart, the Special Operations Team, under the supervision of the IV Team, shall attach one complete set of the prepared and labeled syringes to the 2-Gang, 2-Way Manifold in the order in which the chemical(s) are to be administered. The syringes will be attached to the 2-Gang, 2-Way Manifold in a | The lethal substances shall be placed into three sets of numbered and labeled syringes. One of the sets of syringes is used in the implementation of the death sentence and two sets are available as a backup.<br><br>(Addendum 7/25/2019 at F.) |

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| manner to ensure there is no crowding, with each syringe resting in its corresponding place in the shadow board which is labeled with the name of the chemical, color, chemical amount and the designated syringe number.<br><br>The syringes shall be affixed in such a manner to ensure the syringe labels are clearly visible. Prior to attaching the syringes to the 2-Gang, 2-Way Manifold, the flow of each gauge on the manifold shall be checked by the IV Team Leader running the sterile saline solution through the line to confirm there is no obstruction.<br><br>After all syringes are prepared and affixed to the 2-Gang, 2-Way Manifold in proper order, the Special Operations Team Leader shall confirm that all syringes are properly labeled and attached to the manifold in the order in which the chemicals are to be administered as designated by the Chemical Chart. Each chemical shall be administered in the predetermined order in which the syringes are affixed to the manifold.<br><br>(AZ Protocol, Attachment D at 3.) | |

*Dosage of Drugs*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| **CHART A (PENTOBARBITAL):**<br><br>**Syringe No. Label**<br>**1A** 20mL Sterile Saline Solution, **BLACK**<br>**2A** 2.5gm Pentobarbital, **GREEN**<br>**3A** 2.5gm Pentobarbital, **GREEN**<br>**4A** 20mL Sterile Saline Solution, **BLACK**<br><br>**CHART B (SODIUM PENTOTHAL):**<br>**Syringe No. Label**<br>**1A** 20mL Sterile Saline Solution, **BLACK**<br>**2A** 1.25gm Sodium Pentothal, **GREEN**<br>**3A** 1.25gm Sodium Pentothal, **GREEN**<br>**4A** 1.25gm Sodium Pentothal, **GREEN**<br>**5A** 1.25gm Sodium Pentothal, **GREEN**<br>**6A** 20mL Sterile Saline Solution, **BLACK**<br><br>(AZ Protocol, Attachment D at 2.)<br><br>One-drug protocol: One full set of syringes is used in the implementation of the death sentence (Bank "A") and an additional complete set of the necessary chemicals shall be obtained and kept available in the chemical room, but need not be drawn into syringes unless the primary dosages prove to be insufficient for successful completion of the execution. | A set of syringes will consist of:<br><br>Syringe #1 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent<br>Syringe #2 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent<br>Syringe #3 contains 60 mL of saline flush<br><br>(Addendum 7/25/2019 at H.) |

| | |
|---|---|
| (AZ Protocol, Attachment D at 1.) | |

*Special Accommodations*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The chemical amounts as set forth in the Chemical Chart are designated for the execution of persons weighing 500 pounds or less. The chemical amounts will be reviewed and may be revised as necessary for an inmate exceeding this body weight.<br><br>(AZ Protocol, Attachment D at 3.) | [Not specified] |

*Sedative*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| Upon the inmate's arrival, the inmate may be offered a mild sedative.<br><br>No later than four hours prior to the execution, the inmate may be offered a mild sedative.<br><br>(AZ Protocol at 16.)<br><br>The inmate may be offered a mild sedative based on the inmate's need. The sedative shall be provided to the inmate no later than four hours prior to the execution, unless it is determined medically necessary. | [Not specified] |

| | |
|---|---|
| The offer of the mild sedative, the inmate's decision, and the administration of the sedative, if chosen, shall be documented in the watch log.<br><br>(AZ Protocol, Attachment D at 4.) | |

*Witnesses to Execution*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The director of the state department of corrections or the director's designee shall be present at the execution of all death sentences and shall invite the attorney general and at least twelve reputable citizens of the director's selection to be present at the execution.<br><br>The director shall, at the request of the defendant, permit clergymen, not exceeding two, whom the defendant names and any persons, relatives or friends, not exceeding five, to be present at the execution. The director may invite peace officers as the director deems expedient to witness the execution. No persons other than those set forth in this section shall be present at the execution nor shall any minor be allowed to witness the execution.<br><br>(Ariz. Rev. Stat. Ann. § 13-758)<br><br>The Warden shall inform the inmate that two clergy and five other persons may be invited to be present at | In addition to the Marshal and Warden, the following persons shall be present at the execution:<br><br>(1) Necessary personnel selected by the Marshal and Warden;<br><br>(2) Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary;<br><br>(3) Not more than the following numbers of person selected by the prisoner:<br><br>(i) One spiritual adviser;<br><br>(ii) Two defense attorneys; and<br><br>(iii) Three adult friends or relatives; and<br><br>(4) Not more than the following numbers of persons selected by the Warden:<br><br>(i) Eight citizens; and |

<table>
<tr><th>ARIZONA</th><th>DOJ PROTOCOL(S)</th></tr>
<tr><td>
the execution. The Warden shall notify the inmate that minors are prohibited from witnessing the execution pursuant to A.R.S. §13-758. The Warden shall notify the inmate that requests for Department or contract staff to attend the execution shall be denied. The Warden shall notify the inmate that requests for other inmates to attend the execution shall be denied.
(AZ Protocol at 3-4.)
In the event that the inmate wishes to designate one or more of their attorneys or other members of their legal team (not to exceed a cumulative three persons) to witness the execution, then the inmate shall identify these witnesses twenty-one days prior to the execution, and these witnesses shall sign and timely submit an Official Witness Agreement (Form 710-6), whereupon the Director shall invite these witnesses to attend the execution in accordance with section 10, subsection 10.2.1.1 of this Department Order.
(AZ Protocol at 10.)
The Director shall invite:
<ul><li>The Arizona Attorney General. A.R.S. §13-758.</li></ul>
</td><td>
(ii) Ten representatives of the press.
No other person shall be present at the execution, unless leave for such person's presence is granted by the Director of the Federal Bureau of Prisons. No person younger than 18 years of age shall witness the execution.
(28 C.F.R. § 26.4(c-d))
As to the Eight citizens:
In identifying these individuals, the Warden, no later than 30 days after the setting of an execution date, will ask the United States Attorney for the jurisdiction in which the condemned individual was prosecuted to recommend up to eight individuals who are victims or victim family members to be witnesses of the execution.
(DOJ Protocol at 8.)
When the condemned individual is informed by the Warden of the execution date, he/she will be advised that he/she may designate not more than one spiritual adviser, two defense attorneys, and three adult friends or relatives (at least 18 years old) to be present at the execution. The condemned individual will be asked to submit the list of his/her witnesses to the Warden no later than 30 days after notification of the date of the scheduled execution.
</td></tr>
</table>

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| • Twelve or more reputable citizens, including up to five Arizona-market media.<br>• The five official media witnesses selected as representatives, from media-print, television/cable, radio, and the local market where the crime occurred. These official media witnesses shall also agree to serve as pool reporters.<br>• Law Enforcement and prosecutors from the jurisdiction where the crime occurred.<br>• Any crime victims and survivors of the crime for which the sentence of death will be imposed, once the Victim Services Team identifies those persons and provides to the Director a list of victim witnesses within 14 days prior to the scheduled execution.<br><br>(AZ Protocol at 10.)<br><br>Minors shall not be permitted to witness an execution.<br><br>(A.R.S. §13-758.) | (DOJ Protocol at 6.) |

*Entering the Chamber*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| At the designated time, the overhead microphone will be turned on and the inmate will be brought into the execution room and secured on the table by the prescribed means with the inmate's arms positioned at an angle away from the inmate's side. Existing closed-circuit monitors will allow witnesses in the designated witness room to observe this process.<br><br>(AZ Protocol, Attachment D at 4.) | Thirty minutes prior to the execution, at the appropriate time, the condemned individual will be:<br><br>a. removed from the Inmate Holding Cell by the Restraint Team;<br><br>b. strip-searched by the Restraint Team and then dressed in khaki pants, shirt, and slip-on shoes.<br><br>c. secured with restraints, if deemed appropriate by the Warden;<br><br>d. escorted to the Execution Room by the Restraint Team.<br><br>In the Execution Room the ambulatory restraints, if any, will be removed and the condemned individual will be restrained to the Execution Table.<br><br>(DOJ Protocol at 19.)<br><br>Approximately thirty (30) minutes prior to the scheduled implementation of the death sentence, the condemned individual will be escorted into the execution room. The condemned individual will be restrained to the execution table.<br><br>(DOJ Addendum 7/25/2019 at G.) |

*Witness Observation*

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| At the designated time, the overhead microphone will be turned on and the inmate will be brought into the execution room and secured on the table by the prescribed means with the inmate's arms positioned at an angle away from the inmate's side. Existing closed-circuit monitors will allow witnesses in the designated witness room to observe this process.<br><br>(AZ Protocol, Attachment D at 4.)<br><br>Existing closed-circuit monitors will allow witnesses in the designated witness room to observe the IV Team's vein assessment and placement of IV catheters in the inmate. In addition, the audio feed from the overhead microphone will be turned off following the IV Team's assessment and placement of IV catheters.<br><br>A camera will be focused on the area in the chemical room in which syringes are injected into the IV line, and existing closed-circuit monitors will allow witnesses in the designated witness room to observe the administration of the lethal injection drug(s), including the administration of additional or subsequent doses of the drug(s). | Once the condemned individual has been secured to the table, staff inside the Execution Room will open the drapes covering the windows of the witness rooms.<br><br>(DOJ Protocol at 21.) |

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| All cameras and monitors shall be placed in such a manner so as to ensure and preserve at all times the anonymity of all personnel involved in the execution process.<br><br>(AZ Protocol, Attachment D at 4.) | |

*Intravenous Access*

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| The Director acting upon the advice of the IV Team Leader shall determine the catheter sites. A femoral central line shall only be used if the person inserting the line is currently qualified by experience, training, certification or licensure within the United States to insert a femoral central line. The IV Team members shall insert a primary IV catheter and a backup IV catheter.<br><br>The IV Team Leader shall ensure the catheters are properly secured and properly connected to the IV lines and out of reach of the inmate's hands. A flow of sterile saline solution shall be started in each line and administered at a slow rate to keep the lines open. | A suitable venous access line or lines will be inserted and inspected by qualified personnel and a slow rate flow of normal saline solution begun.<br><br>(Addendum 7/25/2019 at G.)<br><br>If peripheral venous access is utilized, two separate lines shall be inserted in separate locations and determined to be patent by qualified personnel. A flow of saline shall be started in each line and administered at a slow rate to keep the line open. One line will be used to administer the lethal substances and the second will be reserved in the event of the failure of the first line. |



Case: 20-99009, 08/19/2020, ID: 11794899, DktEntry: 16, Page 31 of 43

| | |
|---|---|
| The primary IV catheter will be used to administer the lethal chemical(s) and the backup catheter will be reserved in the event of the failure of the first line. Any failure of a venous access line shall be immediately reported to the Director.<br><br>The IV catheter in use shall remain visible to the Warden throughout the procedure.<br><br>Should the use of the backup IV catheter be determined to be necessary, a set of backup chemicals should be administered in the backup IV.<br><br>(AZ Protocol, Attachment D at 5.) | Any failure of a venous access line shall be immediately reported to the Director or designee.<br><br>(Addendum 7/25/2019 at H.) |

*Last Words*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The Warden shall read aloud a summary of the Warrant of Execution. The Warden shall ask the inmate if he wishes to make a last statement. The microphone will remain on during the last statement. It will be turned off in the event the inmate uses vulgarity or makes intentionally offensive statements.<br><br>(AZ Protocol at 18.) | The condemned individual will be asked if he/she has any last words or wishes to make a statement. The condemned individual will have been advised in advance that this statement should be reasonably brief.<br><br>(DOJ Protocol at 21.) |

*Administration of Drugs*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| Upon receipt of the Director's order and under observation of the IV Team Leader, the Special Operations Team Leader will instruct the assigned Special Operations Team member(s) to begin dispensing the chemicals under the chosen drug protocol.<br><br>Upon direction from the Special Operations Team Leader, the assigned Special Operations Team member will visually and orally confirm the chemical name on the syringe and then administer the first syringe of the sterile saline solution, followed by the full dose of the lethal chemical immediately followed by the sterile saline solution flush.<br><br>When three minutes has elapsed since commencing the administration of the lethal chemical, the IV Team Leader, dressed in a manner to preserve their anonymity, will enter into the room where the Warden and inmate are located to physically confirm the inmate is unconscious by using all necessary medically appropriate methods, and verbally advise the Director of the same. The IV Team Leader will also confirm that the IV line remains affixed and functioning properly. | A set of syringes will consist of:<br>Syringe #1 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent<br>Syringe #2 contains 2.5 grams of Pentobarbital Sodium in 50 mL of diluent<br>Syringe #3 contains 60 mL of saline flush,<br><br>Each syringe will be administered in the order set forth above when directed by supervisory personnel.<br><br>(DOJ Addendum 7/25/2019 at H.) |

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| If, after three minutes, the inmate remains conscious, the IV Team shall communicate this information to the Director, along with all IV Team input. The Director will determine how to proceed or, if necessary, to start the procedure over at a later time or stand down.<br><br>If deemed appropriate, the Director may instruct the Special Operations Team to administer an additional dose of the lethal chemical followed by the sterile saline solution flush. This may be administered via the primary or backup IV catheter, as determined following consultation with the IV Team.<br><br>Upon administering the lethal chemical and sterile saline solution from a backup set, the IV Team shall determine whether the inmate is unconscious by sight and sound, utilizing the audio equipment, camera and monitor. The IV Team Leader will again physically determine whether the inmate is unconscious using proper medical procedures and verbally advise the Director of the same.<br><br>(AZ Protocol, Attachment D at 5-6.) | |

*Monitoring the Condemned*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The inmate will be positioned to enable the IV Team or the Special Operations Team Leader and the Warden to directly observe the inmate and to monitor the inmate's face with the aid of a high resolution color camera and a high resolution color monitor.<br><br>After the inmate has been secured to the execution table, the Restraint Team Leader shall personally check the restraints which secure the inmate to the table to ensure they are not so restrictive as to impede the inmate's circulation, yet sufficient to prevent the inmate from manipulating the catheter and IV lines.<br><br>A microphone will be affixed to the inmate's shirt to enable the IV Team or the Special Operations Team Leader to hear any utterances or noises made by the inmate throughout the procedure. The Special Operations Team Leader will confirm the microphone is functioning properly, and that the inmate can be heard in the chemical room.<br><br>The Restraint Team members will attach the leads from the electrocardiograph to the inmate's chest once the inmate is secured. The IV Team Leader shall confirm | The leads of a cardiac monitor will be attached by qualified personnel.<br><br>(Addendum 7/25/2019 at G.) |

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| that the electrocardiograph is functioning properly and that the proper graph paper is used.<br><br>An IV Team member shall be assigned to monitor the EKG, and mark the EKG graph paper at the commencement and completion of the administration of the lethal chemical(s).<br><br>Throughout the procedure, the IV Team Leader shall monitor the inmate's level of consciousness and electrocardiograph readings utilizing direct observation, audio equipment, camera and monitor as well as any other medically approved method(s) deemed necessary by the IV Team Leader. The IV Team Leader shall be responsible for monitoring the inmate's level of consciousness.<br><br>(AZ Protocol, Attachment D at 4.) | |

*Life-Saving Measures*

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| An Automated External Defibrillator (AED) will be readily available on site in the event that the inmate goes into cardiac arrest at any time prior to dispensing the chemicals; trained medical staff shall make every effort to revive the inmate should this occur. Trained | An individual identified by the Warden will prepare contingency plans related to an emergency occasioned by the execution, such as an institution disturbance, hostage taking, outside demonstration, outside assault on the facility, etc. |



Case: 20-99009, 08/19/2020, ID: 11794899, DktEntry: 16, Page 36 of 43

| | |
|---|---|
| medical personnel and emergency transportation, neither of which is involved in the execution process, shall be available in proximity to respond to the inmate should any medical emergency arise at any time before the order to proceed with the execution is issued by the Director.<br><br>If at any point any team member determines that any part of the execution process is not going according to procedure, they shall advise the IV Team Leader who shall immediately notify the Director. The Director may consult with persons deemed appropriate and will determine to go forward with the procedure, limited to the option provided in Attachment D, §F(6), or to stand down. If the Director determines to stand down, then trained medical staff shall make every reasonable effort to revive the inmate. (AZ Protocol, Attachment D at 6.) | All plans will be reviewed and approved by the Warden and the Regional Director.<br><br>(DOJ Protocol at 27.) |

*Declaring Death*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| When all electrical activity of the heart has ceased as shown by the electrocardiograph, the IV Team Leader will confirm the inmate is deceased and the inmate's death shall be announced by the Director. | The Warden will finalize arrangements for a qualified person to be present at the execution and to declare the executed individual deceased.<br><br>(DOJ Protocol at 9.) |

| | |
|---|---|
| (AZ Protocol, Attachment D at 6.)<br><br>The Director shall announce death when it has occurred.<br><br>(AZ Protocol at 18.)<br><br>A Medical Examiner shall take custody of the body and issue a Certificate of Death.<br><br>(AZ Protocol at 18.)<br><br>An IV Team member will clamp and cut the IV lines leaving them connected to the inmate for examination by a Medical Examiner.<br><br>A Criminal Investigations Unit Investigator and a Medical Examiner will take photos of the inmate's body:<br><br>□ While in restraints prior to being placed in the body bag,<br><br>□ Without restrains prior to being placed in the body bag,<br><br>□ Sealed in the body bag, and<br><br>□ A photo of the seal in place on the bag.<br><br>The inmate's body will be placed on a Medical Examiner's gurney and released into the custody of a Medical Examiner's Office.<br><br>(AZ Protocol, Attachment D at 7.) | After the lethal injection has been administered:<br><br>a. The EKG will be monitored until apparent signs of life have ceased;<br><br>b. The time of death will be announced prior to the drapes being closed.<br><br>The Designated United States Marshal will complete and sign the Return described in Section 26.2(b) of 28 C.F.R. and will file such document with the sentencing court.<br><br>(DOJ Protocol at 21.)<br><br>The condemned individual will be examined by a specified qualified person following the administration of the lethal substances to ensure that death has occurred;<br><br>When the qualified individual is satisfied that death has occurred, the time of death will be announced to the witnesses.<br><br>(DOJ Protocol at 22.) |

*Attorney Access During Execution*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| In the event the inmate has designated one of his attorneys to witness the execution, temporary office space will be provided for the inmate's counsel in the Administration Building during the scheduled day of execution.<br><br>One attorney and two additional members of the legal team may be permitted to remain in the office space during the execution. The inmate's legal team will be permitted to bring into the temporary office space one mobile phone, one tablet, and one laptop.<br><br>While the attorney witness is in the witness room, a member of the Witness Escort Team shall hold one mobile phone designated by the attorney, to be made available to the attorney in exigent circumstances. The mobile phone may not be used inside the witness room.<br><br>(AZ Protocol at 17.) | [Not specified] |

*Video/Audio Recording*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| Unclear, but reference to closed-circuit television (and audio) monitoring throughout protocol (very likely real-time). | No photographic or other visual or audio recording of the execution shall be permitted.<br><br>(28 C.F.R. § 26.4(f)) |

*Secrecy Provisions*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The identity of executioners and other persons who participate or perform ancillary functions in an execution and any information contained in records that would identify those persons is confidential and is not subject to disclosure pursuant to title 39, chapter 1, article 2.<br><br>If a person who participates or performs ancillary functions in an execution is licensed by a board, the licensing board shall not suspend or revoke the person's license as a result of the person's participation in an execution.<br><br>Ariz. Rev. Stat. Ann. § 13-757(C-D)<br><br>The anonymity of any person, as defined in A.R.S. §1-215(28) and A.R.S. §13-105(30), who participates in or performs any ancillary function(s) in the execution, including the source of the execution chemicals, and any information contained in records that would identify those persons are, as required by statute, to remain confidential and are not subject to disclosure. A.R.S. §13-757(C).<br><br>(AZ Protocol at 2.) | The identities of personnel considered for and/or selected to perform death sentence related functions, any documentation establishing their qualifications and the identities of personnel participating in federal judicial executions or training for such judicial executions shall be protected from disclosure to the fullest extent permitted by law.<br><br>(DOJ Addendum 7/25/2019 at B.) |

*Modification of the Protocol*

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| This Department Order establishes procedures for planning and carrying out the execution of a person convicted of a capital offense and sentenced to death. These procedures shall be followed as written, except that the Director of the Arizona Department of Corrections (Director) is allowed to make limited deviations from or adjustments to these procedures when required to address certain unexpected or otherwise unforeseen contingencies, subject to the limitations on the Director's discretion as set forth herein.<br><br>Except as expressly permitted herein, the Director shall not have any authority to deviate from or make adjustments to any material aspects of the execution process, including, but not limited to, the execution chemicals or dosages, consciousness checks, the access of the press and the inmate's counsel to the execution, and the timeframes established by this Department Order.<br><br>(AZ Protocol at 1, but *see* Dkt. No. 606-4.) | The purpose of this manual is to outline BOP policy and procedures for planning and carrying out the execution of a person convicted of a capital offense. These procedures should be observed and followed as written unless deviation or adjustment is required, as determined by the Director of the BOP or the Warden.<br>(DOJ Protocol at 1.)<br><br>The procedures utilized by the BOP to implement federal death sentences shall be as follows unless modified at the discretion of the Director or his/her designee, as necessary to (1) comply with specific judicial orders; (2) based on the recommendation of on-site medical personnel utilizing their clinical judgment; or (3) as may be required by other circumstances.<br><br>(DOJ Addendum 7/25/2019 at A.) |



Case: 20-99009, 08/19/2020, ID: 11794899, DktEntry: 16, Page 41 of 43

*Autopsy/Post-Mortem*

| ARIZONA | DOJ PROTOCOL(S) |
|---|---|
| The Warden shall advise the inmate that his/her body shall not be used for organ donation.<br><br>(AZ Protocol at 4.)<br><br>The Warden shall summarize the options available with the inmate for release and disposition of their body after the autopsy is performed. The Warden shall direct the inmate to review the previously completed Disposition of Remains, Form 710-3, and update as necessary no later than 14 days prior to the execution. If the inmate provides no information or the information is insufficient or incorrect the deceased shall be disposed in accordance with Department Order #711, Notification of Inmate Hospitalization or Death.<br><br>(AZ Protocol at 4.) | After the execution has been carried out, qualified personnel selected by the Warden shall conduct an examination of the body of the prisoner to determine that death has occurred and shall inform the Marshal and Warden of his determination. Upon notification of prisoner's death, the Marshal shall complete and sign the Return described in § 26.2(b) or any similar document and shall file such document with the sentencing court.<br><br>The remains of the prisoner shall be disposed of according to procedures established by the Director of the Federal Bureau of Prisons<br><br>(28 C.F.R. § 26.4(g-h))<br><br>The condemned individual's body will not be used for organ donation.<br><br>(DOJ Protocol at 6.)<br><br>The Warden will review options available to the condemned individual following the release of the body to the Vigo County Coroner. The Warden will ask the condemned individual to provide instructions concerning the disposition of his/her body no later than 14 days prior to the execution. If the condemned individual fails to |

| ARIZONA | DOJ PROTOCOL(S) |
| --- | --- |
| | provide instructions, the body will be handled in accordance with the Accounting Management Manual.<br><br>(DOJ Protocol at 6-7.)<br><br>After the witnesses have departed, the restraints will be removed from the condemned individual's body. The Vigo County Coroner or designee will be escorted into the Execution Facility. The body will be removed by the Vigo County Coroner, who will place it in a coroner's vehicle for transportation.<br><br>(DOJ Protocol at 23.) |