CA No. 20-99009

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Petitioner-Appellant,

v.

LEZMOND CHARLES MITCHELL,

Respondent-Appellee.

DC No. 3:01-cr-01062-DGC
(Civil No. 3:09-cv-08089-DGC)

**DEATH PENALTY CASE**

**Execution Set For:**
**Date: August 26, 2020 at**
**Time: To Be Determined.**

# PETITIONER-APPELLANT'S PETITION FOR REHEARING/REHEARING EN BANC

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

The Honorable David G. Campbell
United States District Judge

CUAUHTEMOC ORTEGA
Interim Federal Public Defender
JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310
Email: jonathan_aminoff@fd.org
Attorneys for Petitioner-Appellant
LEZMOND CHARLES MITCHELL

# TABLE OF AUTHORITIES

**Page(s)**

I. INTRODUCTION ........................................................................................1

II. BACKGROUND ..........................................................................................2

A. Procedural History ..............................................................................2

B. Out-of-Circuit Litigation Regarding Section 3596 ...............................5

III. REASONS FOR GRANTING THE PETITION ...........................................7

A. The Court should grant en banc review to decide an important question of first impression: what does section 3596 mean when it says "implement the sentence in the manner prescribed by state law"? ..........................................................................................7

B. The panel's decision conflicts with Supreme Court and Circuit precedent by taking evidence and creating a new lethal injection protocol just days before Mitchell's execution ...................................10

C. Panel rehearing is warranted because the opinion improperly overlooked facts and argument raised by Mitchell in his briefing and during oral argument. ..................................................................11

IV. CONCLUSION..........................................................................................14

# I. INTRODUCTION

Petitioner Lezmond Mitchell sought a stay of execution from this Court so he could litigate his claim that the Federal Death Penalty Act ("FDPA") requires the federal government to follow Arizona's lethal injection protocol. When the United States Supreme Court unanimously denied the Government's motion to vacate an injunction on the exact issue considered by the Panel, Justice Alito wrote "in light of what is at stake, it would be preferable for the District Court's decision to be reviewed on the merits by the Court of Appeals for the District of Columbia Circuit before the executions are carried out." *Barr v. Roane*, 140 S. Ct. 353 (2019) (statement of Justice Alito, respecting the denial of stay or vacatur). But here, the panel has cobbled together a patchwork lethal injection protocol based on a non-confronted statement received for the first time on appeal, and sent Mitchell to his execution. This is not how this Court operates. This Court should grant his petition for en banc review, vacate the panel's opinion, and stay his execution. In the alternative, the panel should grant rehearing, stay his execution, and either restore the case to the calendar for full briefing, or issue an order remanding the matter to the district court to make essential factual determinations. Fed. R. App. 40(a)(4)(B), (C). Either way, this execution cannot proceed before this question of "exceptional importance" is decided. Fed. R. App. 35(b)(1)(B).

## II. BACKGROUND

### A. Procedural History

On September 15, 2003, the district court formally sentenced Mitchell to death and issued its judgment, which included the following directive:

> Furthermore, pursuant to Title 18, Section 3596 of the United States Code, the defendant is hereby committed to the custody of the Attorney General of the United States until exhaustion of the procedures for appeal of the judgment and conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the defendant to the custody of the United States Marshal, who shall supervise implementation of the sentence *in the manner prescribed by the law of the State of Arizona.*

D. Crt. Dkt. No. 425 (capitalization in original; italics added). This language mirrored the Government's Proposed Judgment and Order (Dkt. No. 411) and tracks the language of the Federal Death Penalty Act, 18 U.S.C. § 3596. The Government did not object to this language at the formal sentencing hearing or in any later motion. The Court subsequently amended its judgment on January 8, 2004, but left the above portion of the order unchanged. Dkt. No. 466.

On July 29, 2020, T.J. Watson, the warden of the Federal Correctional Complex at Terre Haute, Indiana ("USP Terre Haute") served Mitchell with a letter indicating that pursuant to 28 C.F.R. § 26.3(a)(1), the BOP had set an execution date for Mitchell of August 26, 2020. Dkt. No. 606-2.

Mitchell moved in the district court to vacate the execution date as it failed to comply with the trial court's judgment and with § 3596, and moved to stay the execution until such time as the court could resolve the substantive issues presented by the motion, specifically: whether (and to what extent) the Government was required to comply with Arizona law in executing Mitchell. Mitchell provided several examples of the ways in which the Bureau of Prisons' protocol ("BOP protocol") (Dkt. No. 606-1) differed from Arizona's protocol (Order 710) (Dkt. No. 606-3). The Government admitted it intended to follow the BOP protocol and claimed it needed only to abide by Arizona's method of execution (lethal injection) but not Order 710. After briefing, but no evidentiary development, the district court denied Mitchell's motions finding that "in the manner prescribed by the law of the State of Arizona" meant that Mitchell must be executed using the same method as would be used in Arizona (lethal injection) but that the Government did not need to comply with Arizona's lethal injection protocol.

Mitchell filed a notice of appeal and an emergency motion to stay his execution pending the resolution of the substance of his appeal. The Court ordered the Government to respond to Mitchell's motion and to address the underlying merits of the appeal, and permitted Mitchell to file a reply in support of his motion (limited to 10 pages, Circuit Rule 27-1(d).). Following oral argument, the Court

ordered the Government to file a declaration from someone at the Bureau of Prisons stating that Mitchell's execution would comply in four[1] ways with Order 710. D.E. 13. The Government complied, and Mitchell filed an objection stating that there were additional ways in which the BOP protocol differed from Order 710, and if the Court intended such a fact-based approach, then an evidentiary hearing was required in the district court. The Court nevertheless denied Mitchell's motion, assuming, without deciding, that § 3596 requires that the Government follow Order 710, but only with respect to those provisions that "effectuate death." *Mitchell IV*, at 6-7. Rather than parsing through Order 710, or the 37-page table that Mitchell provided to the Court which breaks down in detail all of the ways in which Order 710 and the BOP protocol differ, the Court relied on the four examples of differences between Order 710 and the BOP protocol that Mitchell provided in his 10-page reply.

---

[1] Those four terms were: (1) that the person or persons who place the IV lines be "currently certified or licensed within the United States to place IV lines," (2) that the insertion of "either peripheral IV catheters or a central femoral line" shall be based upon the recommendation of a person "currently certified or licensed within the United States to place IV lines," (3) that "[a] central femoral venous line will not be used unless the person placing the line is currently qualified by experience, training, certification, or licensure within the United States to place a central femoral line," and (4) that the chemicals used in the execution "have an expiration or beyond-use date that is after the date that an execution is carried out."

## B. Out-of-Circuit Litigation Regarding Section 3596

On July 25, 2019, the Government filed notice in four federal lethal injection lawsuits in the district court for the District of Columbia (D.D.C.) that, after an 8-year hiatus, the Government had created the BOP Protocol and intended to execute multiple inmates in accordance with this protocol. The lawsuits were consolidated and the Plaintiffs moved for a preliminary injunction to bar their executions such that their underlying claims could be resolved. The D.D.C. focused on the claim that the 2019 Protocol exceeds statutory authority, and therefore violates the Administrative Procedures Act, by establishing a single procedure for all federal executions rather than using § 3596's state-prescribed procedure. *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 12-CV-0782, 2019 WL 6691814, at *3 (D.D.C. Nov. 20, 2019), *vacated and remanded sub nom. In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020). The Plaintiffs argued, as here, that because they were sentenced under § 3596, the Government was required to execute them in accordance with state law, not the BOP protocol. After a careful analysis of the history of § 3596 and parsing the language of the statute, the D.D.C. found that the Plaintiffs had established a likelihood of success on the merits. *Id*. at *3-*7. In its analysis of irreparable harm, the D.D.C. determined that, absent a preliminary injunction,

Plaintiffs "will suffer the irreparable harm of being executed under a potentially unlawful procedure before their claims can be fully adjudicated." *Id*. at *7.

The circuit court denied the Government's motion to vacate the D.D.C.'s order. *Roane v. Barr*, Case No. 19-5322, Doc. #1818236 (December 2, 2019). And the Supreme Court unanimously denied the Government's application to vacate the D.D.C's order. *Barr v. Roane*, 140 S. Ct. 353 (2019). In his statement respecting the denial, Judge Alito, joined by Justices Gorsuch and Kavanaugh, stated that "in light of what is at stake, it would be preferable for the District Court's decision to be reviewed on the merits by the Court of Appeals for the District of Columbia Circuit before the executions are carried out." *Id*. at 353.

The circuit court then received extensive briefing on the issue of the preliminary injunction as well as the merits of the underlying claim, held oral argument, and took several months for careful deliberation before reaching a decision in *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 109 (D.C. Cir. 2020). Although each judge interpreted § 3596 differently, the majority ultimately concluded that § 3596 required that the Government execute the inmate in the manner prescribed by the state's formal laws and regulations, but does not require compliance with less formal protocols, such an internal prison rules. The Supreme Court denied certiorari, and Plaintiffs Lee, Purkey, and Honken were executed in mid-July, 2020.

In a separate case, the family members of Lee's victims sought to enjoin Lee's execution to allow them to attend, as is their right under the Arkansas protocol, the state in which Lee was sentenced to death. The Seventh Circuit held that when § 3596 speaks to the manner prescribed by state law, it means the manner in which the "sentence is carried out, not who watches." *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020).

## III. REASONS FOR GRANTING THE PETITION

### A. The Court should grant en banc review to decide an important question of first impression: what does section 3596 mean when it says "implement the sentence in the manner prescribed by state law"?

When Congress passed the FDPA, Attorney General Janet Reno expressed concern that § 3596 would reinstitute a system whereby the "Federal Government does not directly carry out executions, but makes arrangements with states to carry out capital sentences in Federal cases." H.R. Rep. No. 104-23, at 22 (1995) (quoting Letter from Attorney General Janet Reno to Hon. Joseph R. Biden, Jr., at 3-4 (June 13, 1994)). She urged Congress to amend the FDPA to allow the Government to carry out executions pursuant to its own regulations. *Id*. Congress

declined. In total, the Department of Justice would attempt to have Congress change the law on at least 9 separate occasions, but to no avail.[2]

The plain text of § 3596 contains the broad terms "implement," "manner," and "prescribe," which no Court has found simply relate to the method of execution, but rather require something more. Indeed, the Government's own protocol, titled "Implementation of Death Sentences in Federal Cases" includes far more detail than simply the "method" of execution. *See, e.g.*, 28 C.F.R. 26.4 (including notice requirements, access to spiritual advisors, and witnesses).

"Manner" is used elsewhere in the FDPA in the context of an aggravating circumstances as a term encompassing facts and circumstances regarding the way in which the crimes were committed. 18 U.S.C. § 3592(c)(6) ("[t]he defendant committed the offense in an especially heinous, cruel, or depraved *manner* in that it involved torture or serious physical abuse to the victim.") (emphasis added); *see IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("identical words used in different parts of the same statute are generally presumed to have the same meaning."). This Court previously upheld the broad reading of manner in this context in this case. *Mitchell I*, 502 F.3d 931, 976-978 (2007). And in the execution context, the

[2] H.R. 2359, 104th Cong. (1995); H.R. 1087, 105th Cong.(1997); S. 3, 105th Cong. (1997); H.R. 4651, 105th Cong. (1998); S. 899, 106th Cong. (1999); H.R. 5040, 109th Cong. (2006); S. 1860, 110th Cong. (2007); H.R. 3156, 110th Cong. (2007); H.R. 851, 110th Cong. (2007).

Supreme Court has interpreted "manner" to refer to "execution procedures" including Kentucky's choice of a three-drug protocol over a one-drug protocol, as well as its protocols requiring monitoring by trained personnel, not simply the choice to use lethal injection. *Baze v. Rees*, 553 U.S. 35 (2008); *see also Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) (exclusively using "method" to refer to lethal injection itself, but "manner" to refer to lethal injection plus the way it is administered).

The district court adopted the *Protocol Cases* ruling that requires the Government to follow Arizona state law and binding regulations, dkt. 618 at 4-12, but found that Order 710 does not constitute state law, and therefore conducted no further fact finding. However, Mitchell has established that Order 710 creates a mandatory procedure that is judicially enforceable under a settlement agreement between the Arizona Attorney General and a class of condemned inmates which includes all inmates sentenced to death in Arizona. Dkt. no. 606-4. The panel's decision, which assumes, without deciding, that Order 710 controls Mitchell's execution, leaves open the important question: what constitutes a state rule or formal regulation in the context of § 3596? Moreover, it creates significant doubt for the other federally death-sentenced inmates in this Circuit currently challenging their convictions or awaiting trial.

### B. The panel's decision conflicts with Supreme Court and Circuit precedent by taking evidence and creating a new lethal injection protocol just days before Mitchell's execution

In response to the examples Mitchell provided of the ways in which the BOP protocol differs from the Arizona protocol, the Panel sought to fashion a compromise: have the Government submit a declaration[3] addressing a few examples of ways in which Order 710 differs from the BOP Protocol and execute Mitchell in accordance with a patchwork protocol. A panel of this Court has previously rejected such judicial creativity wherein the district court suggested alleviating an inmate's concerns over being executed with an untested three-drug lethal injection protocol by giving the inmate the option of selecting a one-drug protocol. This Court ordered that such judicial legislating was beyond the power of the court, and beyond the court's expertise until such time as the district court conducted proper fact-finding proceedings. *Morales v. Cate*, 623 F.3d 828, 831 (9th Cir. 2010), as amended (Sept. 28, 2010). The Panel's decision in this case is materially indistinguishable from the trial court's error in *Morales*.

Indeed, the Panel's fact finding concerning the material differences between Order 710 and the BOP protocol and its reliance on a declaration submitted for the first time on appeal from a declarant who was not called as a witness, or cross-

[3] The Panel's decision does not actually order the Government to follow the statements made in the declaration.

examined, below transforms this Court from an appellate to a trial court, and is therefore beyond the scope of this Court's authority and in contradiction with Supreme Court and Circuit precedent. *Kappos v. Hyatt*, 566 U.S. 431, 439 (2012) ("[A] district court, unlike a court of appeals, has the ability and the competence to receive new evidence and to act as a factfinder."); *see also Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1511 n.5 (9th Cir. 1994) ("Facts not presented to the district court are not part of the record on appeal.").

Consistent with circuit precedent, if the Panel's decision is that Order 710 controls Mitchell's execution, then the Panel must remand to the district court for further proceedings consistent with that decision, specifically a factual determination to establish: (1) which portions of Order 710 fall within the category of procedures that effectuate death; (2) whether those provisions are consistent with the BOP protocol; and (3) whether the U.S. Marshalls can supervise, and the BOP can implement, the execution in the manner consistent with requisite provisions of Order 710.

### C. Panel rehearing is warranted because the opinion improperly overlooked facts and argument raised by Mitchell in his briefing and during oral argument.

The panel found that Mitchell waived facts and arguments because he allegedly did not raise them in his motion to stay his execution pending appeal. *See*

D.E. 18-1 at 8 n.6, 12 n.8. These findings are belied by Mitchell's briefing and argument, as well as orders establishing the parameters of the litigation.

For example, the panel found that Mitchell waived consideration of five additional inconsistencies between BOP's execution protocol and the procedures in the Department Order Manual, including "(1) the presence of witnesses and spiritual advisers, Ariz. Rev. Stat. § 13-758; (2) notice of an execution date, Ariz. Rev. Stat. § 13-759; (3) judicial postponement of execution dates upon a finding of impracticality, Ariz. R. Crim. P. 31.23(c); (4) accommodations for defense counsel during the execution, such as the provision of temporary office space and access to mobile devices; and (5) discretion given the Director of the Arizona Department of Corrections ("ADC") to modify the execution protocol." D.E. 18-1 at 8 n.6. But this assertion is simply not correct.

In his reply brief and in his reply to the Government's Notice of Filing of Declaration, Mitchell discussed how the stipulation entered into by ADC and other state actors creates legally enforceable rights, which effectively give the protocol the force of law. *See* D.E. 10 at 5-7; D.E. 16 at 1 n.1. Mitchell specifically presented facts and argument that the Arizona protocols now no longer give the ADC director the discretion that is afforded to BOP under their protocols. D.E. 10 at 5-7. The lack of discretion permitted in Arizona—and the concomitant added protection this lack of discretion provides to persons executed under Arizona

law—is a material difference that Mitchell highlighted and that the panel should have considered in its decision.

The panel similarly—and improperly—determined that Mitchell had forfeited reliance on "purported differences" between the protocols that Mitchell put into a chart and included in its Reply to the Government's declaration. D.E. 18-1 at 12 n.8. This finding is problematic for two reasons. First, in light of the panel's order directing future briefing to include discussion of the merits, and in light of the fact that the Government was permitted to submit a declaration explaining how BOP's protocol would be materially the same as Arizona's, the panel should not have held Mitchell to a different standard by refusing to consider the evidence presented in his Reply to the Government's declaration. Second, it is contrary to this Court's amended order directing that the parties be prepared to discuss the underlying merits of the appeal in "the remaining briefs on the pending emergency motion" and during oral argument. D.E. 7. Throughout the litigation in the court below and before this Court, Mitchell repeatedly stated that he was entitled to be executed according to the entirety of the Arizona protocol, and because an analysis of the two protocols required evidentiary development, he was entitled to a hearing and further briefing to establish those differences. He also stated in his pleadings and during oral argument that the differences referenced in the initial motion were *not* all of the material differences between the protocols.

## IV. CONCLUSION

Mitchell respectfully requests that this Court grant his petition for en banc review, vacate the panel's opinion, and stay his execution. In the alternative, the panel should grant rehearing, stay his execution, and either restore the case to the calendar for full briefing, or issue an order remanding the matter to the district court to make essential factual determinations Fed. R. App. 40(a)(4)(B), (C).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Interim Federal Public Defender

DATED: August 20, 2020

By */s/ Jonathan C. Aminoff*
JONATHAN C. AMINOFF
Deputy Federal Public Defender

Attorney for Petitioner-Appellant
Lezmond Charles Mitchell

FILED

AUG 19 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff-Appellee,<br>v.<br>LEZMOND C. MITCHELL,<br>Defendant-Appellant. | No. 20-99009<br><br>D.C. No.<br>3:01-cr-01062-DGC-1<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted August 18, 2020
Pasadena, California

Before: Sandra S. Ikuta, Morgan B. Christen, and Andrew D. Hurwitz, Circuit Judges.

Per Curiam

Lezmond Mitchell has filed an emergency motion to stay his execution pending appeal of the denial of his motion to strike his execution warrant, vacate his execution, and enjoin violation of the district court's original judgment. We deny the motion because Mitchell has not carried his burden of demonstrating

either that he is likely to succeed on the merits or that it is probable that he would suffer an irreparable injury in the absence of a stay.

I

Lezmond Mitchell was convicted of numerous offenses and sentenced to death in September 2003.[1] The district court's judgment (the "Judgment") provides, "When the sentence is to be implemented, the Attorney General shall release the defendant to the custody of the United States Marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State of Arizona."[2] The parties agree that, for present purposes, there is no

[1] We have described the facts of this case in detail in three prior opinions. *See generally Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020); *Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015); *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007).

[2] The district court amended the Judgment on January 8, 2004, but left the provision quoted above unchanged.

meaningful difference between the language of the Judgment and the language of the Federal Death Penalty Act (FDPA). *See* 18 U.S.C. § 3596(a).[3]

On July 25, 2019, T.J. Watson, the warden of the Federal Correctional Complex at Terre Haute, Indiana, served Mitchell with a letter indicating that the Bureau of Prisons had set an execution date of December 11, 2019.[4] On October 4, 2019, however, we stayed Mitchell's execution pending resolution of his third appeal. *Mitchell v. United States*, No. 18-17031, ECF No. 26 (Oct. 4, 2019).

On July 29, 2020, after we rejected Mitchell's appeal but before the mandate issued, *see* Fed. R. App. P. 41(b), Watson served Mitchell with another letter

---

[3] The FDPA provides, in pertinent part:

> A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

18 U.S.C. § 3596(a).

[4] On July 31, 2019, Watson served Mitchell with an amended letter that corrected the name of the sentencing judge, which had been misstated on the prior version.

indicating that the Bureau of Prisons had set a new execution date of August 26, 2020 (the "Execution Warrant"). The Execution Warrant states that it "serve[s] as official notification that pursuant to [28 C.F.R. § 26.3(a)(1)], the Director of the Federal Bureau of Prisons has set August 26, 2020, as the date for your execution by lethal injection."[5]

On August 6, 2020, Mitchell filed a motion in district court to strike the Execution Warrant, vacate his execution date, and enjoin any violation of the Judgment. Mitchell argued that if the Bureau of Prisons follows its execution protocols his execution will not be "implement[ed] . . . in the manner prescribed by the law of [Arizona]" and thus will be in violation of the Judgment and 18 U.S.C. § 3596(a). In support of his argument, Mitchell identified specific procedures set forth in Arizona statutes, the Arizona Rules of Criminal Procedure, and the Arizona Department of Corrections's Department Order 710 (the "Department Order Manual"). According to Mitchell, the Bureau of Prisons' protocols are inconsistent with or allow it to deviate from these Arizona procedures.

[5] 28 C.F.R. § 26.3(a)(1) establishes how the Bureau of Prisons will determine the date and time for an execution.

The district court denied the motion. Mitchell filed a notice of appeal with the district court and moved to stay his execution pending resolution of the appeal. We heard argument on Tuesday, August 18, 2020.

II

We consider Mitchell's motion for a stay pending appeal using the "traditional test for stays" set out in *Nken v. Holder*, 556 U.S. 418, 433 (2009). This test considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The party seeking the stay bears the burden of showing that these factors favor a stay. *Id.* at 433–34. "The first two factors . . . are the most critical," and the "mere possibility" of success or irreparable injury is insufficient to satisfy them. *Id.* at 434 (cleaned up). As to likelihood of success, the movant must show a "reasonable probability" or "fair prospect" of success. *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011) (citation omitted). As to irreparable harm, the standard is higher: the movant must demonstrate that irreparable harm is probable—as opposed to merely possible—if the stay is not granted; that is, irreparable harm

must be "the more probable or likely outcome." *Id.* at 968. We consider the final two factors only "[o]nce an applicant satisfies the first two." *Nken*, 556 U.S. at 435.

Mitchell argues that he is entitled to a stay pending appeal of the district court's order because the district court erred in denying his motion for injunctive relief. Mitchell claims that on appeal of the district court's order, he would have a likelihood of success on the merits of his claim that inconsistencies between the Bureau of Prisons' protocol for implementing his execution and Arizona's procedures violate the Judgment and the FDPA. Mitchell likewise asserts that he would prevail on the second injunctive relief factor, that he will suffer an irreparable harm, due to the possibility that he "could be executed by means of an illegal protocol."

For purposes of Mitchell's stay motion, we need not comprehensively delineate the scope of the FDPA. *Cf. In re Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020). We assume without deciding that the Department Order Manual constitutes "law of the State" for purposes of the FDPA and the Judgment. *See* 18 U.S.C. § 3596(a) (requiring the sentence to be implemented "in the manner prescribed by the law of the State in which the

sentence is imposed"). In addition, we hold that procedures that do not effectuate death fall outside the scope of 18 U.S.C. § 3596(a). *See Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020). The FDPA incorporates only those state laws that prescribe the manner for "implementation" of a death sentence. *See* 18 U.S.C. § 3596(a) ("When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed."). In this context, "implement" means "to carry out" or "to give practical effect to and ensure of actual fulfillment by concrete measures." *Implement*, Webster's Third New International Dictionary 1134 (1961). Therefore, 18 U.S.C. § 3596(a) addresses, at most, state laws that set forth procedures for giving practical effect to a sentence of death. We therefore agree with the Seventh Circuit's conclusion that, even under a broad reading, the FDPA incorporates "only 'those [state] procedures that effectuate the death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements.'" *Peterson*, 965 F.3d at 554 (citation omitted).

In his stay motion, Mitchell identifies six purported inconsistencies between the Bureau of Prisons' execution protocol and the procedures in the Department Order Manual.[6] We consider each in turn.

First, he points to the Department Order Manual's requirement that the IV Team be "currently certified or licensed within the United States to place IV lines." The Bureau of Prisons' protocol provides that "[q]ualified personnel includes currently licensed physicians, nurses, EMTs, Paramedics, Phlebotomists, other medically trained personnel, including those trained in the United States Military having at least one year professional experience and other personnel with

---

[6] In district court, Mitchell identified five additional purported inconsistencies relating to: (1) the presence of witnesses and spiritual advisers, Ariz. Rev. Stat. § 13-758; (2) notice of an execution date, Ariz. Rev. Stat. § 13-759; (3) judicial postponement of execution dates upon a finding of impracticality, Ariz. R. Crim. P. 31.23(c); (4) accommodations for defense counsel during the execution, such as the provision of temporary office space and access to mobile devices; and (5) discretion given the Director of the Arizona Department of Corrections to modify the execution protocol. Because Mitchell has not raised these purported inconsistencies in connection with his motion to stay his execution pending appeal, we do not consider them. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994). Moreover, the first four purported inconsistencies fall outside the scope of 18 U.S.C. § 3596(a), because they are not pertinent to effectuating death. *See Peterson*, 965 F.3d at 554.

At oral argument, Mitchell argued for the first time that the Bureau of Prisons' protocol calls for the use of a saline flush in a manner that is different from the Department Order Manual. Mitchell forfeited any reliance on this difference because it was neither raised to the district court nor raised in the briefing. *See Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1223 (9th Cir. 2018).

necessary training and experience in a specific execution related function." We see little difference between these requirements; both require that the persons placing IV lines have the appropriate qualifications. Given the substantial overlap between the two protocols, Mitchell argues only that it is possible that the "[q]ualified personnel" referred to in the Bureau of Prisons' protocol might not be "currently certified or licensed within the United States to place IV lines."

As to the second and third examples of purported inconsistencies, Mitchell points to the Department Order Manual's requirements that "[a] central femoral venous line will not be used unless the person placing the line is currently qualified" to do so and that "[t]he IV Team shall be responsible for inserting either peripheral IV catheters or a central femoral line as determined by the Director acting upon the recommendation of the IV Team Leader." The Bureau of Prisons' protocol provides that a "suitable venous access line or lines will be inserted and inspected by qualified personnel" and that "[t]he Director or designee shall determine the method of venous access (1) based on the training and experience of personnel establishing the intravenous access; (2) to comply with specific orders of federal courts; or (3) based upon a recommendation from qualified personnel." Again, we see little difference between the protocols; both give the Director discretion to determine, based on a recommendation from qualified personnel, the

method of venous access, and both protocols require that the venous access line be placed by qualified personnel. At oral argument, Mitchell primarily focused on the possibility that under the Bureau of Prisons' protocol, the decision to insert a peripheral IV catheter or a central femoral line may be made without a recommendation of a person "currently certified or licensed within the United States to place IV lines." This argument therefore merges with his first claim—that it is possible that the Bureau of Prisons may allow persons without the proper qualifications to place IV lines.

Fourth, Mitchell points to the Department Order Manual's requirement that a chemical used in execution "have an expiration or beyond-use date that is after the date that an execution is carried out." The Bureau of Prisons' protocol also prohibits the use of expired drugs: its March 10, 2020 General Guidelines for Compounding and Testing Pentobarbital Sodium for Use in Executions (the "General Guidelines") provide that an injectable solution is "available for use" only if, among other things, "its expiration date has not passed." Therefore, the state and federal requirements are substantially the same. Mitchell argues only that it is possible that the Bureau of Prisons will not comply with its protocol or will make last-minute changes to its protocol.

Fifth, Mitchell points to the Department Order Manual's requirement that the "decision to use a compounded or non-compounded chemical . . . be provided to the inmate and their counsel of record in writing at the time the state files a request for Warrant of Execution in the Arizona Supreme Court." Because the Bureau of Prisons has made public its decision to use compounded Sodium Pentobarbital in the General Guidelines, Mitchell has received notice that the Bureau of Prisons intends to use compounded Pentobarbital Sodium to carry out the execution.

Sixth, Mitchell points to the Department Order Manual's requirement that "[a] quantitative analysis of any compounded or non-compounded chemical to be used in the execution shall be provided upon request within ten calendar days after the state seeks a Warrant of Execution." At oral argument, Mitchell conceded that he had not requested such a quantitative analysis from the Bureau of Prisons, but such information has been made readily available to him. The government represented in district court that the "BOP has tested its compounded pentobarbital for quality assurance," and has publicly filed certificates of analysis and laboratory reports regarding Pentobarbital Sodium in the United States District Court for the

District of Columbia. *See In re BOP Execution Protocol Cases*, 1:19-mc-00145-TSC, ECF No. 39-1 at 975–1020; ECF No. 97-2 at 1–9.[7]

We are not persuaded by Mitchell's arguments. The Bureau of Prisons' protocol and the Department Order Manual procedures on which Mitchell relies are largely indistinguishable. To the extent there is any difference between the federal and Arizona procedures with respect to the first four examples, the Bureau of Prisons has provided a declaration certifying that it will comply with those procedures.[8] As to the fifth and sixth examples, the Bureau of Prisons has complied with the Department Order Manual's procedures. Therefore, Mitchell has not carried his burden of proving a "reasonable probability," *Leiva-Perez*, 640 F.3d at 967 (citations omitted), that his execution will be carried out in a manner inconsistent with Arizona law (assuming that the Department Order Manual is state law). It is not enough to show a "mere possibility" that the Bureau of Prisons might use protocols inconsistent with Arizona procedures. *Id.* (cleaned up). Nor

[7] This procedure arguably also falls outside the scope of 18 U.S.C. § 3596(a), because providing such information is not pertinent to the effectuation of death. *See Peterson*, 965 F.3d at 554.

[8] Mitchell filed a reply to the Bureau of Prisons' declaration, to which he attached a 37-page document setting forth additional purported inconsistencies between the Bureau of Prisons' protocol and Arizona procedures. Reliance on these purported differences was forfeited. *See supra* note 6; *Greenwood*, 28 F.3d at 977.

has Mitchell carried his burden of showing that it is more probable than not, *id.* at 968, that he will suffer any irreparable harm. Therefore, Mitchell is not entitled to the "extraordinary remedy" of a stay pending appeal, *Nken*, 556 U.S. at 428 (citation omitted), and we do not address the final two factors, *see id.* at 435.

***

In sum, Mitchell has not carried his burden of demonstrating a likelihood of success on the merits or that it is probable that he will suffer irreparable harm, and therefore he is not entitled to a stay or to the underlying injunctive relief he seeks. We also recognize that the Supreme Court has instructed us that last-minute stays of executions "should be the extreme exception, not the norm." *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (U.S. July 14, 2020) (citation omitted). We therefore deny Mitchell's motion for a stay of execution pending appeal and affirm the district court's order denying his motion to strike the Execution Warrant, vacate the execution date, or enjoin violation of the Judgment.

**IT IS SO ORDERED**.

Case: 20-99009, 08/19/2020, ID: 11791516, DktEntry: 2, Page 1 of 4

# United States Court of Appeals for the Ninth Circuit

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

## Information Regarding Judgment and Post-Judgment Proceedings

### Judgment

- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

### Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)

- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

### Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)
### Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)

**(1) A. Purpose (Panel Rehearing):**

- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B. Purpose (Rehearing En Banc)**

- A party should seek en banc rehearing only if one or more of the following grounds exist:

- ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
- ► The proceeding involves a question of exceptional importance; or
- ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2) Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-2.

**(3) Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

**(4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**

- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

**Attorneys Fees**

- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**

- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**

- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 10. Bill of Costs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)** 

**Case Name** 

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**  **Date** 

*(use* "s/[typed name]" *to sign electronically-filed documents)*

| **COST TAXABLE** | **REQUESTED** *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| | | | **TOTAL:** | $ |

***Example:** *Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

## Form 11. Certificate of Compliance for Petitions for Rehearing or Answers

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 20-99009

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: 3,202.
*(Petitions and answers must not exceed 4,200 words)*

**OR**

◉ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** /s/ Jonathan C. Aminoff **Date** Aug 20, 2020
*(use* "s/[typed name]" *to sign electronically-filed documents)*