**C.A. No. 20-99009**
**CAPITAL CASE**
Ikuta, J.; Christen, J.; Hurwitz, J.

---

D. Ct. No. 3:01-cr-01062-DGC

---

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEZMOND C. MITCHELL,

Defendant-Appellant.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

# RESPONSE TO PETITION FOR PANEL REHEARING AND REHEARING EN BANC

MICHAEL BAILEY
United States Attorney
District of Arizona

KRISSA M. LANHAM
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone: (602) 514-7500
Attorneys for Appellee

Date Submitted via ECF: August 21, 2020

# I. TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | Table of Contents | 1 |
| I. | Introduction and Summary of Argument | 2 |
| II. | Background | 4 |
| III. | Argument | 10 |
| IV. | Conclusion | 19 |
| V. | Statement of Related Cases | 20 |
| VI. | Certificate of Compliance | 21 |
| VII. | Certificate of Service | 22 |

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Next week, on August 26, 2020, Defendant-Appellant Lezmond C. Mitchell is scheduled to be executed by the federal Bureau of Prisons (BOP) for the 2001 carjacking and murder of a nine-year-old girl and her grandmother. On August 6, 2020—more than 17 years after his sentencing, more than a year after his execution was first scheduled, and despite having voluntarily withdrawn from other litigation timely presenting the same issue—Mitchell filed a motion contending that the planned execution is inconsistent with the Federal Death Penalty Act (FDPA). The district court correctly declined to enjoin the execution on that basis, and the panel correctly rejected Mitchell's contentions applying settled injunctive standards. That narrow, unanimous decision does not warrant en banc review.

*First*, Mitchell presents two questions regarding the FDPA that he claims are exceptionally important—whether the federal government must comply with some state execution procedures beyond the general method of execution, and whether the detailed procedures contained in Arizona's execution protocol are among those the federal government must follow. But the panel assumed Mitchell *would prevail* on each of those FDPA issues, and then concluded that Mitchell identified no material conflict between the "largely indistinguishable" federal and state execution protocols (Dkt. 18-1 ("Slip Op."), at 12), let alone one warranting equitable relief.

The panel's correct resolution on this narrow, fact-bound ground—which, even now, Mitchell fails to directly address—is not worthy of en banc review.

*Second*, Mitchell faults the panel for ordering a declaration regarding representations the government consistently made below and on appeal about the lack of any meaningful conflict between the federal and state execution protocols. But it was Mitchell who bore the burden of making a clear showing of probable real-world harm and yet he failed to introduce any evidence demonstrating such harm.

As the Supreme Court has very recently emphasized, "last-minute stays of execution "should be the extreme exception, not the norm." *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (U.S. July 14, 2020) (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019)). Both Judge Campbell and the unanimous panel faithfully applied black-letter equitable standards in denying Mitchell's request for this type of exceptional relief based on his eleventh-hour challenge to finely grained details of execution procedure. His petition for further review should be denied.

## II. BACKGROUND

### A. The Criminal Case

#### 1. The Murders of Alyce Slim and Jane Doe[1]

In October 2001, Mitchell and an accomplice (Johnny Orsinger) devised and carried out a plan to carjack a truck in New Mexico in order to use the truck in an armed robbery of a trading post in Arizona. During the carjacking, the two men brutally murdered and dismembered a nine-year-old girl (Jane Doe) and her 63-year-old grandmother, Alyce Slim.

After Slim agreed to give Mitchell and Orsinger a ride, they stabbed her 33 times inside her pick-up truck. They then drove Slim's truck 40 miles, with Jane Doe sitting next to her grandmother's mutilated corpse. Mitchell stopped in an isolated spot, forced Jane Doe out of the truck, and ordered her to "lay down and die." Mitchell cut her throat twice. As Doe lay on the ground bleeding, Mitchell and Orsinger used rocks to bludgeon her head until she died.

Mitchell and Orsinger then decapitated their victims and cut off their hands, burying the severed body parts. Mitchell and others proceeded to commit the planned armed robbery and other violent crimes using Slim's truck. Mitchell

[1] The factual background may be found in *United States v. Mitchell*, 502 F.3d 931, 942-46 (9th Cir. 2007).

confessed to the murders, led Navajo police officers to Slim and Jane Doe's bodies, and had a knife with Slim's blood on it when he was arrested.

2. Procedural History

Mitchell was convicted at a jury trial and received a capital sentence in September 2003. This Court affirmed on direct appeal. *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007). Mitchell subsequently filed a collateral attack under 28 U.S.C. § 2255. The district court denied relief, and this Court affirmed. *Mitchell v. United States*, 790 F.3d 881 (9th Cir. 2015). In 2018, Mitchell filed a motion under Fed. R. Civ. P. 60(b)(6) to reopen his Section 2255 proceedings following *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017). The district court denied the motion, and this Court again affirmed on the merits. *Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020).

Meanwhile, in 2014, Mitchell moved to intervene in a civil action filed in the District of Columbia challenging the then-extant federal lethal injection protocol. *See* Doc. 11, *Robinson v. Mukasey*, No. 1:07-cv-02145 (D.D.C. June 6, 2014). That action was eventually consolidated with others, now collectively styled *In re Federal Bureau of Prisons' Execution Protocol Cases*, No. 1:19-mc-145 (D.D.C.). *See* Doc. 27, *Robinson*, *supra*. The district court granted Mitchell's unopposed motion and filed his complaint, which sought to enjoin his execution on the ground that, as

relevant here, BOP's protocol was unauthorized by the FDPA. *See* Doc. 12, at 2, 35, 38, *Robinson*, *supra*.

Three years later, Mitchell filed two separate pro se motions to withdraw and intentionally chose to forgo participating further in the litigation. Doc. 14, *Robinson, supra*; Doc. 18, *Robinson*, *supra*. The district court granted these requests only after seeking to ensure Mitchell was "fully aware of the legal consequences attendant to his withdrawal from this lawsuit." Doc. 20, *Robinson*, *supra*.

On July 25, 2019, the Department of Justice adopted and publicly filed in D.D.C. the amended lethal injection protocol that Mitchell now challenges (CR 606-1) and delivered to Mitchell notice of its intent to carry out his sentence pursuant to federal regulations. *See* Dkt. 84-1, *Lezmond Mitchell v. United States*, No. 09-cv-08089-DGC (D. Ariz.). At an August 2019 status conference, Mitchell's counsel confirmed his participation in the D.C. protocol litigation and forecast that Mitchell would re-intervene and "be a party in that case before much longer." (CR 606-6 at F-081-82.) But Mitchell did not re-intervene in the litigation, in which the D.C. Circuit ultimately rejected as "without merit" claims by death-row inmates like those Mitchell now raises. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 112 (D.C. Cir. 2020) (per curiam) ("*Protocol Cases*").

Mitchell's execution was originally scheduled for December 11, 2019. However, the three-judge panel (over Judge Ikuta's dissent) stayed the execution

pending resolution of Mitchell's Rule 60(b) appeal. *Mitchell v. United States*, No. 18-17031, Dkt. 26 (9th Cir. Oct. 4, 2019). The mandate issued in that case on August 18, 2020, dissolving the stay, after the Court considered and denied two petitions for rehearing en banc.[2] *See id.*, Dkts. 38-39, 46, 52, 55.

On July 29, 2020, BOP notified Mitchell that it had rescheduled his execution for August 26, 2020. (CR 606-2.) Eight days later, Mitchell moved to vacate his execution date in his district court criminal case, contending that his execution under BOP's lethal-injection protocol violates the FDPA—the same claim that the D.C. Circuit had resolved in the case Mitchell had joined and then departed years earlier. (CR 606.) The next day, he moved to enjoin his execution pending the resolution of his FDPA challenge. (CR 609.)

Judge Campbell rejected Mitchell's challenge on the merits, adopting a reading of the FDPA more favorable to Mitchell than that the government urged. (CR 618 at 10.) The district court also determined that Arizona's execution protocol—which is specified by a "department order" issued by the Director of the Arizona Department of Corrections (ADOC) ("Order 710")—did not constitute the "law of the State," and in any event did not conflict with the federal protocol as to "those procedures that effectuate the death" (a limitation recognized by even the dissenting judge in the *Protocol Cases*). (CR 618 at 13-14, 16 (citing *Protocol Cases*,

[2] Judge Hurwitz would have granted the second petition. (Dkt. 52.)

955 F.3d at 151 (Tatel, J., dissenting).) The district court accordingly denied Mitchell's motion to stay as moot. (CR 618 at 3.)

Mitchell appealed and filed an emergency motion to stay his execution. (Dkt. 3.) The three-judge panel heard oral argument on August 18, 2020. (Dkt. 12.) Following oral argument, as ordered by the panel, the government submitted a declaration regarding BOP's execution procedures demonstrating the lack of any conflict between the federal procedures to be used in Mitchell's execution and the Arizona protocol as to the insertion of catheters and lines, qualifications for persons inserting such catheters, and the expiration date of the chemicals. (Dkt. 15.)

3. The Panel Opinion

The panel denied Mitchell's emergency motion to enjoin his execution and affirmed the denial of injunctive relief. In a narrow opinion, the panel held that Mitchell had not carried his burden of demonstrating either likely success on the merits or equities warranting equitable relief. (Dkt. 18-1 ("Slip Op.").)

The panel emphasized that it did not need to "comprehensively delineate the scope of the FDPA." (Slip Op. at 6.) First, it determined that Mitchell had forfeited various arguments because he did not raise them below or raised them for the first time at oral argument and in a post-argument response to the declaration. (Slip Op. 8 n.6, 12 n.8). As an alternative ruling with respect to four of the forfeited arguments, the panel made its only holding on the FDPA, namely, that "procedures

that do not effectuate death fall outside the scope of" the FDPA, the text of which incorporates "only those state laws that prescribe the manner for 'implementation' of a death sentence." (Slip Op. at 7, 8 n.6 (citing *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020).) Such procedures, as determined by the panel, the Seventh Circuit, and even dissenting Judge Tatel, incorporate "only those [state] procedures that effectuate the death, including choice of lethal substances, dosages, vein-access procedures, and medical-personnel requirements." (Slip. Op. at 7 (quoting *Peterson*, 965 F.3d at 554).)

The panel then considered six (non-forfeited) inconsistencies Mitchell identified between the federal protocol and Order 710, "assum[ing] without deciding" that (as Mitchell argued) Order 710 constitutes the "'law of the State'" for purposes of the FDPA. (Slip Op. at 6, 8-11.) It found the two protocols' death-effectuating procedures "largely indistinguishable." (Slip Op. at 12.) "To the extent there was any [arguable] difference" in four areas, the panel found that BOP's declaration closed the gap. (Slip Op. at 12.) And as to the final two "inconsistencies" Mitchell identified—providing notice of the intent to use compounded chemicals and providing a quantitative analysis of the chemicals to be used—the panel found that the BOP had complied with the Arizona protocol. (Slip Op. at 12.) As such, Mitchell failed to carry his burden of "proving a reasonable probability that his execution will be carried out in a manner inconsistent with Arizona law" and failed

to show that it was "more probable than not that he would suffer any irreparable harm." (Slip Op. at 12-13.)

## III. ARGUMENT

"An en banc hearing or rehearing is not favored and ordinarily will not be ordered," Fed.R.App.P. 35(a), absent circumstances that are "extraordinary," *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1479 (9th Cir. 1987). Mitchell's petition presents no exceptional questions or other basis for rehearing. Mitchell asks the en banc Court to address questions that the panel assumed arguendo in his favor, and fails to show any error or conflict with precedent in the panel's narrow and unanimous holding that he failed to clearly show an entitlement to equitable relief.

### A. This Case Does Not Present the Questions that Mitchell Asks the En Banc Court to Answer

To obtain a stay of execution, an inmate "must demonstrate (1) that he is likely to succeed on the merits of such a claim, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Beaty v. Brewer*, 649 F.3d 1071, 1072 (9th Cir. 2011) (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The burdens of proof and persuasion are on the inmate seeking injunctive relief, and the inmate must carry that burden "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Although Mitchell's motion purported to request a stay of execution, the relief he sought was actually a preliminary injunction. Mitchell does not and cannot challenge the validity of his death sentence or seek to stay the court's judgment embodying that sentence; rather, he seeks injunctive relief barring his execution so he may challenge the government's manner of implementing it. Unlike a "stay," which "operates upon the judicial proceeding itself," the injunction Mitchell requests—an order prohibiting the government from executing him while his appeal is pending—is an "order directed at someone" that "governs that party's conduct." *Nken v. Holder*, 556 U.S. 418, 428 (2009). Accordingly, Mitchell's request for emergency relief here demanded "'a significantly higher justification' than a request for a stay" pending appeal. *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (per curiam) (citation omitted).

Mitchell falls well short of satisfying that high standard. The panel assumed that the questions Mitchell frames as exceptionally important *could be resolved in his favor* and he would *still not be entitled to relief*. There was no error in that careful, narrow decision, and there is no basis for review by the en banc Court.

1. The FDPA directs that "a United States marshal . . . shall supervise implementation of the [death] sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Mitchell's petition purports to raise two questions of exceptional importance: (1) the scope of the

FDPA's reference to "the law of the state," and (2) the meaning of its reference to the "manner" of execution. (Pet. at 7-9.) Because the panel opinion assumed (without deciding) the answers to both questions in Mitchell's favor, en banc review is unwarranted.

a. First, Mitchell contends (Pet. 9) that there is an open question about whether the FDPA requires the federal government to follow Arizona's execution protocol, contained in Order 710. But the panel mooted that question by explicitly "assum[ing] without deciding that the Department Order Manual constitutes 'law of the State' for purposes of the FDPA and the Judgment." (Slip Op. at 6.) Given the panel's generous legal assumptions, there is no legal issue for the en banc court to review. The panel's narrow, fact-bound conclusion that there is no conflict between federal procedures and the Arizona protocol does not warrant rehearing. *See, e.g.*, *Smith v. Baldwin*, 510 F.3d 1127, 1159-60 (9th Cir. 2007) (Reinhardt, J., dissenting) ("We do not go en banc to sort out questions of fact . . . .").

Mitchell appears to disagree with the panel on its subsidiary alternative holding that the FDPA incorporates only state-law provisions that relate to the effectuation of death. (Slip. Op. 7). In adopting that holding, which the panel applied only to four of Mitchell's forfeited contentions (Slip. Op. 7, 8 n.6), the panel agreed with Judge Tatel and every other appellate judge to consider the question, including a unanimous Seventh Circuit panel, that "procedures that do not effectuate

death fall outside the scope of 18 U.S.C. § 3596(a). (Slip. Op. 7); *see Protocol Cases*, 955 F.3d at 1955 F.3d at 151 (Tatel, J., dissenting); *Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020). That alternative ruling had no impact on the panel's factbound resolution of the six contentions that Mitchell properly presented in this Court. (See Slip Op. 8-12; see *id.* at 12 n.7 (noting that one contention "arguably" failed under the alternative ruling)). As such, there are now no legal rulings that might arguably justify en banc review, much less an issue of exceptional importance warranting review.

Moreover, Mitchell provides no reason to question the widespread judicial consensus on this issue. His boundless interpretation, encompassing minutiae like the number of witnesses attending the execution and impossible-to-satisfy requirements like obtaining an execution warrant from a state supreme court, would effectively disable the federal government from carrying out the death penalty in many states. *See Roane*, 140 S. Ct. at 353 (Statement of Alito, J.). That view has no plausible grounding in the FDPA, and there is no sound basis for this Court to create a circuit split with every court of appeals to have examined the issue. *See Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1180 (9th Cir. 2013) (Wardlaw and Callahan, JJ., concurring in the denial of rehearing en banc where "the panel opinion . . . does not present an issue of exceptional importance, and . . . the contrary result would create a circuit split.").

b. Second, on the meaning of "manner," the panel's consideration of the procedures in the Arizona protocol implicitly assumed arguendo Mitchell's position that the FDPA applies to certain procedures beyond just the top-line method of execution. Had the panel adopted the government's view—embraced by Judge Katsas of the D.C. Circuit and strongly suggested by three Supreme Court Justices—that the FDPA's "manner" provision compels the government to follow only the "top-line . . . execution method[,]" there would have been no need to assume that the Arizona protocol constitutes the law of the state. *Protocol Cases*, 955 F.3d at 113; *see Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (Statement of Alito, J.). Nor did the panel adopt the position of the district court and Judge Rao that the FDPA "requires the federal government to follow execution procedures set forth in state statutes and regulations, but not execution procedures set forth in less formal state execution protocols." *Protocol Cases*, 955 F.3d at 112; (see CR 618 at 10.) There is no basis for the Court to grant en banc rehearing on this question, because the panel has already assumed the view most favorable to Mitchell.

2. The *Protocol Cases* litigation is instructive, too, in evaluating Mitchell's request for further review. There, despite the case squarely presenting the FDPA question after full briefing as to four death-row inmates subject to four differnt state protocols, the D.C. Circuit denied en banc review. Order, Doc. 1842952, No. 19-5322 (D.C. Cir. May 15, 2020). Even after the government had set

execution dates in July and August 2020 for the inmates litigating that case, the Supreme Court denied their application for a stay and their petition for certiorari. *Bourgeois v. Barr*, No. 19-1348 (19A1040(, 2020 WL 3492763 (June 29, 2020). This Court should likewise "act with appropriate dispatch," *Roane*, 140 S. Ct. at 353, and deny further review.

### B. The Panel's Consideration of a BOP Declaration Does Not Create A Circuit Conflict

Mitchell is on no firmer ground arguing that the panel's citation to a BOP declaration regarding the procedures to be used in his execution creates an intra-circuit conflict. (Pet. at 10-11 (citing *Morales v. Cate*, 623 F.3d 828, 831 (9th Cir. 2010); *Kappos v. Hyatt*, 566 U.S. 431, 439 (2012); *Nat'l Wildlife Fed'n v. Burlington N. R.R. Inc.*, 23 F.3d 1508, 1511 n.5 (9th Cir. 1994).) The government had consistently represented the absence of a conflict between the procedures it would use in Mitchell's execution and the Arizona protocol, both below and on appeal. And even had the Declaration provided any new evidence, it would have been within the panel's discretion to accept it. At base, Mitchell's argument seeks to fault the panel for holding him to his failure to clearly show irreparable harm as the standard governing his motion required. Nothing in the panel's decision warrants en banc review.

*First*, the dispositive point is that Mitchell failed himself to present evidence of inconsistency between the federal and Arizona protocols and to do so with a "clear showing" that could justify the injunction that he seeks. Mitchell did not show any conflict between the protocols themselves. At best, he simply identified areas in which the federal protocol did not expressly show that the protocols were the same. And rather than develop a factual record to show a divergence in fact, Mitchell failed to proffer any evidence of a likely difference, much less a materially significant one. That fact-bound failure of proof was enough to fully resolve his claim.

*Second*, the panel's order that the government back up its consistent representations with a declaration did not introduce new evidence. The government argued below and on appeal that "there is no conflict between the federal and state protocols" on these points. (CR 611 at 16-17; Dkt. 9 at 18.) The federal protocol is broader than Arizona's, but it "does not prohibit what the Arizona protocol requires." (Dkt. 9 at 18.) The government's declaration confirming the absence of any such conflict, supported by citations of the D.C. District Court administrative record, did not introduce new evidence on appeal.

*Finally*, even if the Declaration *had* introduced new evidence, this case would not conflict with Circuit or Supreme Court precedent. This Court has recognized its authority to consider declarations submitted on appeal, as has the Eleventh Circuit in circumstances similar to these. *See United States v. Paris*, 827 F.2d 395, 401 n.3

(9th Cir. 1987) (accepting prosecutor's declarations submitted after oral argument, and finding declarations did not create new factual issue where defendant failed to meet his burden to show prosecutorial misconduct); *see also, e.g., Dickerson v. Alabama*, 667 F.2d 1364, 1367 (11th Cir. 1982) (explaining that "it is clear that the authority" exists for appellate courts to "supplement the record on appeal with evidence not reviewed by the court below").

Mitchell's cases are not to the contrary. In ordering the government to submit a declaration confirming representations it had consistently made about the federal protocol, the panel did not judicially legislate: the Declaration committed to using the same procedures the BOP used during all three executions in July. *Cf. Morales*, 623 F.3d at 831 (overturning district court order giving defendant option of execution using only one drug where state mandated three-drug protocol). Similarly, unlike in *Nat'l Wildlife Fed'n*, 23 F.3d at 1511 n.5, the Declaration doesn't concern events that occurred after the district court's order. And *Kappos*, 566 U.S. at 439, which arose in the context of judicial appeals of agency determinations, discussed a district court's ability to obtain new evidence in lieu of remanding to the agency itself.

Mitchell's requested remedy for the panel's alleged overreach—a "remand to the district court" for "a factual determination" to establish facts that Mitchell was required to clearly show in seeking equitable relief (Pet. at 11)—is unwarranted.

Mitchell has had ample opportunities to introduce evidence to support his request for injunctive relief. Had he remained a party to the D.C. protocol litigation rather than withdrawing, or had he brought his challenge here when his execution was first scheduled more than a year ago, he would have long ago received the factual development he now demands five days before his execution. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006) (instructing courts to apply "a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay").[3] His decision to delay this challenge to federal protocol procedures until shortly before his scheduled execution weighs heavily against affording him relief. The Supreme Court has expressly instructed courts to "police carefully against attempts to use such challenges as tools to interpose unjustified delay" given that "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of [a capital] sentence." *Bucklew*, 139 S. Ct. at 1133-34.

Last month, the Supreme Court reiterated that last-minute reprieves in capital cases should be an "extreme exception," *Lee*, 2020 WL 3964985, at *2 (citation omitted), summarily reversing three separate injunctions and a fourth stay in the span

[3] Mitchell's challenge to the panel's factbound holding that he forfeited various minor challenges to the federal protocol by raising them for the first time in a reply brief is meritless, *see, e.g.*, *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010); *United States v. Ankeny*, 502 F.3d 829, 836 (9th Cir. 2007), and unworthy of review.

of a week to allow three federal executions to proceed. The Court had also denied a stay application based on the same FDPA claim that Mitchell raises here. In light of those decisions and the equitable factors the panel found, Mitchell falls well short of establishing an entitlement to a last-minute reprieve and this Court should deny his petition for rehearing en banc.

## IV. CONCLUSION

The petition should be denied.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Krissa M. Lanham*
KRISSA M. LANHAM
Assistant U.S. Attorney

## V. <u>STATEMENT OF RELATED CASES</u>

To the knowledge of counsel, there are no related cases pending.

## VI. CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number 18-17031**

I am the attorney for the United States. I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached Answer to Petition for Panel Rehearing and Rehearing En Banc is:

☒ Prepared in a format, typeface, and type style that complies with Fed.R.App.P. 32(a)(4)-(6) (including that it is proportionately spaced, in Times New Roman font, and has a typeface of 14 points or more) and contains 4,132 words (petitions and answers must not exceed 4200 words), or is

☐ In compliance with Fed.R.App.P. 32(a)(4)-(6) and does not exceed 15 pages.

August 21, 2020
Date

*s/ Krissa M. Lanham*
KRISSA M. LANHAM
Assistant U.S. Attorney

## VII. CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2020, I electronically filed the attached Answer to Petition for Panel Rehearing and Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*s/ Krissa M. Lanham*
KRISSA M. LANHAM
Assistant U.S. Attorney